# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CLARK TILE CO., INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RED DEVIL, INC. and ) <br> MENDARD, INC., ) <br> ) <br> Defendants, ) <br> ) <br> v. ) <br> ) <br> RONALD M. CLARK ) <br> ) <br> Third-party Defendant. ) | No. 04 C 2928 <br><br> Magistrate Judge Michael T. Mason |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Clark Tile Co., Inc. ("Clark Tile"), filed a multi-count complaint against defendants Red Devil, Inc. ("Red Devil") and Menard, Inc. ("Menard") alleging claims for trade dress violations pursuant to 15 U.S.C. § 1125(a) as well as violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Uniform Deceptive Trade Practices Act and common law unfair competition. Defendants Red Devil and Menard filed counterclaims against Clark Tile and a third-party complaint against Ronald M. Clark ("Mr. Clark") seeking a declaration of invalidity of the purported trade dress and alleging claims for tortious interference with an existing business relationship and vexatious and frivolous litigation. Pursuant to Federal Rule of Civil Procedure 56, defendants Red Devil and Menard filed a motion for summary judgment on all counts of plaintiff's complaint. For the reasons set forth below, defendants' motion for summary

judgment is denied.

**BACKGROUND**[1]

Plaintiff Clark Tile is a manufacturer and distributor of plastic products. Defendant Red Devil is a manufacturer and distributor of hand tools, including plastic adhesive spreaders. Defendant Menard is a retailer and operates home improvement stores in Illinois. Third-party defendant, Mr. Clark, has been involved with Clark Tile for many years and has been president of Clark Tile since 1975.

### A. The Trade Dress Claims

This action arises out of Clark Tile's trade dress claims involving the shape, color and overall look of certain hand tools designed by plaintiff. These hand tools are commonly known as "spreaders" or "trowels."[2] Spreaders or trowels are used to spread adhesives, plaster or the like. There are two types of spreaders at issue in this case: plaintiff's 1/8 inch notch size red disposable plastic adhesive spreaders and plaintiff's 3/32 inch notch size white disposable plastic adhesive spreaders.

Since 1980, Clark Tile has sold millions of its spreaders, including about seven million red plastic spreaders and about five million white plastic spreaders. Red Devil started to buy Clark Tile's plastic adhesive spreaders in 1987 and continued to purchase Clark Tile's spreaders through 2002. Red Devil would then sell the spreaders

---

[1] The facts in this section are derived from the parties' Rule 56.1 statements, the exhibits attached thereto, plaintiff's complaint and defendants' amended counterclaims. This Court took into consideration all of the evidence the parties submitted. However, for the sake of brevity, this section is limited to the facts relevant to our decision.

[2] The terms "spreader" and "trowel" may be used interchangeably throughout this Opinion.

to retailers such as defendant Menard. Clark Tile sold its spreaders to Red Devil from 1987 to 2002 without ever advising Red Devil that Clark Tile claimed to own trade dress in the spreaders. At some point, the parties' relationship deteriorated and Red Devil began purchasing spreaders from its new manufacturer, Branchcomb. Clark Tile contends that the spreaders Red Devil purchased from Branchcomb and sold to retailers infringe on its protectible trade dress.

Clark Tile seeks to protect the overall look of its spreaders. Plaintiff's complaint alleges that "Clark Tile has a protectible trade dress in its 1/8 inch notch size red disposable plastic adhesive spreader and in its 3/32 inch notch size white disposable plastic adhesive spreaders." (Cmplt. ¶ 7). Clark Tile also alleges that the purchasers, retailers and private label resellers of its spreaders recognize the *"shape and color"* of the red adhesive spreaders and the white adhesive spreaders as being manufactured by Clark Tile, or if not specifically by Clark Tile, by a single, albeit anonymous, source. (Cmplt. ¶ 13).

In their first set of interrogatories, defendants asked Clark Tile to identify any features or combination of features for which plaintiff claimed individual trade dress rights, such that copying of that feature alone would constitute trade dress infringement. Clark Tile's response states in pertinent part:

> The over-all look of the plaintiff's plastic adhesive trowels, especially their shape and color, is claimed as protectible trade dress, particularly when combined with the length of time they have been sold, the channels of trade and the customers to whom they have been sold, the manner of their display intermingled with each other, their inexpensive price and lack of distinctive packaging. The evidence may show other elements, too.

Defendants deny Clark Tile's trade dress charges and allege that plaintiff's trade dress

3

claims fail because plaintiff's spreaders incorporate functional features.

**B.  The Prior Utility Patent**

In 1978 and 1979, Mr. Clark designed several embodiments of the plastic spreaders at issue in this case. Prior to Mr. Clark's invention, most spreaders were made of metal. Mr. Clark applied for a utility patent for his plastic spreaders on March 14, 1980, and received U.S. Patent 4,316,302, entitled "Trowel," on February 23, 1982 (hereafter, "'302 patent").[3] The '302 patent covers several different embodiments of Mr. Clark's invention. The different embodiments are set forth in claims 1 through 9 of the '302 patent. The patent states:

> Having described what is new and novel and desired to secure by Letters Patent, what is claimed is:
>
> 1.   A hand trowel comprising a blade portion having a substantially flat lower surface and four edges; and a longitudinally arcuate[4] handle portion integrally formed at its ends with the upper surface of said blade portion, extending outwardly from said upper surface, and having a first reinforcing ridge integrally formed therein substantially along the longitudinal centerline thereof and extending onto the upper surface of said blade portion.
>
> 2.   A hand trowel as recited in claim 1 wherein said blade portion is of rectangular shape; and said handle portion is disposed along a longitudinal axis of said blade portion.
>
> 3.   A hand trowel as recited in claim 2 further including a closed cell pad of substantially the same dimensions as said blade portion affixed to the lower surface of said blade portion.
>
> 4.   A hand trowel as recited in claim 1 wherein said blade portion is elongate trapezoidal shape; and said handle portion is disposed substantially along

---

[3] The '302 patent expired on February 23, 2000.

[4] Arcuate means "curved like a bow." Merriam-Webster's Collegiate Dictionary 61 (10th ed. 1993).

the longitudinal centerline of said blade portion.

5. A hand trowel as recited in claim 4 wherein the outer edges of said blade portion are serrated in a predetermined pattern.

6. A hand trowel as recited in claim 1 further including second and third reinforcing ridges integrally formed with said handle portion, one disposed at each longitudinal edge of said handle portion and extending onto the upper surface of said blade portion.

7. A hand trowel as recited in claim 1 wherein said blade portion is provided with a substantially rectangular, centrally disposed opening there-through, the inner edges of said opening being recessed a preselected depth into the lower surface of said blade portion, and a substantially rigid insert plate being affixed in said recessed opening such as to be flush with the lower surface of said blade portion.

8. A hand trowel as recited in claim 7 further including a reinforcing ridge integrally formed with the upper surface of said blade portion about the edges of said opening.

9. A hand trowel as recited in claim 1 wherein said handle portion is of an arcuate configuration in both longitudinal and transverse dimensions.

The different embodiments of Mr. Clark's invention are also illustrated in Figures 1 through 5 of the '302 patent. For instance, Figure 1 shows a plastering trowel that is rectangular in shape and has no notches or serrations. Figure 1 depicts an embodiment that is set forth in the following claims: claim 1 (a flat, four-edged blade with an integrally formed arcuate handle, having a first reinforcing ridge substantially along the longitudinal centerline extending onto the upper surface of the blade), claim 2 (a blade that is rectangular in shape), claim 6 (second and third reinforcing ridges integrally formed with the handle and extending onto the upper surface of the blade), claim 7 (a rectangular, centrally disposed, recessed insert plate) and claim 8 (reinforcing ridges integrally formed with the upper surface of the blade about the edges of the insert plate). Figure 2 illustrates the same embodiment as Figure 1 with the addition of a

5

grouting pad. This embodiment is set forth in claim 3.

Figure 3 illustrates an embodiment of the invention adapted for use as a notched trowel for spreading adhesives. In this embodiment, described in claims 4 and 5, the blade is formed in a trapezoidal configuration having each of its edges serrated in a predetermined pattern. The trapezoidal shaped adhesive spreader also includes the features set forth in claims 1, 6, 7, and 8 (*i.e.*, a flat, four-edged blade with an integrally formed arcuate handle, having a first reinforcing ridge; second and third reinforcing ridges extending onto the upper surface of the blade; and an insert plate with integrally formed reinforcing ridges).

Figures 4 and 5 depict an embodiment with an alternative configuration of the arcuate handle wherein the requirement of certain reinforcing ridges is obviated. This embodiment is set forth in claim 9, which describes a hand trowel, as recited in claim 1, wherein the handle portion is of an arcuate configuration in both longitudinal and transverse dimensions.

### C. Mr. Clark's Testimony

Mr. Clark testified about several different aspects of Clark Tile's spreaders. For instance, he testified that the shape of the red and white plastic adhesive spreaders is trapezoidal so that it can be used by a person who is either right or left-handed in a right or left-hand corner. Mr. Clark testified that the arcuate shape of the handle was selected for strength and because it is easy to manufacture. With respect to the reinforcing ridges, Mr. Clark testified that they add to the structural integrity of the spreader, make it more durable, and they facilitate the flow of plastic through the mold. He also said the ridges were made to be attractive.

Mr. Clark testified that Clark Tile became known as the only company that makes colored plastic adhesive trowels. Mr. Clark testified that Clark Tile's line of spreaders eventually included approximately ten spreaders, each having a basic color. According to Mr. Clark, plaintiff's spreaders have been made in the same colors for over 25 years. Mr. Clark testified that Red Devil would infringe on Clark Tile's trade dress not only if Red Devil were to color its spreaders red, but also if Red Devil changed the color of all of its spreaders to yellow, green, burgundy, black or blue. These are colors Clark Tile uses for its different types of spreaders.

Mr. Clark also testified about the notches on Clark Tile's red and white plastic adhesive spreaders. When asked if the size of the notch had to do with the spreading characteristics of the tool, Mr. Clark testified that "it could be concluded that the notch is a gauge." Mr. Clark agreed that depending on the notch size, the compound or adhesive would spread differently.

With respect to the insert plate, Mr. Clark testified that he chose the location of the insert plate for ease of manufacturing. He further testified that he chose the white background for the plate because white is the natural color of high-impact styrene (the plastic) and therefore, he would save the cost of coloring it. Additionally, Mr. Clark testified that with a white background, he could print any color logo or advertising message on the insert plate.

### D. Other Evidence

The notch size of an adhesive spreader helps determine the thickness of the layer of adhesive that is applied. Pamphlets that discuss which notch size to use when applying adhesive for particular applications are available to consumers. Since prior to

2004, defendant Red Devil has issued guides for its customers to educate them as to the selection of a proper notch size according to use. According to the guide, different types of notch serrations may be used for application of the same type of tile. For instance, Red Devil's guide shows that both a triangular notch and a squared-off notch can be used for metal and ceramic tile and wallboard.

**ANALYSIS**

**I.    Legal Standards**

Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). Summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). Therefore, we must look "at the evidence as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

The moving party has the burden of demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323. However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is

a genuine issue of material fact for trial." *Payne*, 337 F.3d at 771.

## II. General Principles

"The term trade dress refers to the 'appearance of a product when that appearance is used to identify the producer.'" *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1015 (7th Cir. 2005) (quoting *Publ'ns Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 338 (7th Cir. 1998)). More specifically, "trade dress" refers to the total image of a product, including features such as "size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 935 (7th Cir. 1989). Although federal law protects a product's trade dress, "in many instances there is no prohibition against copying goods and products." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29, 121 S. Ct. 1255, 149 L. Ed. 2d 164 (2001). The Supreme Court has recognized that "copying is not always discouraged or disfavored by the laws which preserve our competitive economy." *Id.* Accordingly, to prevail on a claim of trade dress infringement, the plaintiff must demonstrate that: (1) its trade dress is inherently distinctive or has acquired secondary meaning, (2) its trade dress is primarily non-functional, and (3) the defendant's trade dress is confusingly similar, engendering a likelihood of confusion in the marketplace. *Roulo*, 886 F.2d at 935; see also, *Incredible Techs*, 400 F.3d at 1015.

## III. Functionality

The focus of the parties' debate is whether plaintiff's spreaders have functional features. The party seeking protection for an unregistered trademark bears the burden of demonstrating that its trade dress is nonfunctional. *TrafFix*, 532 U.S. at 32; 15 U.S.C. § 1125(a)(3). However, on a motion for summary judgment, all that the plaintiff is

9

required to do is raise a genuine issue of material fact that its trade dress is nonfunctional. *Invisible Fence, Inc. v. Perimeter Techs., Inc.*, 2007 U.S. Dist. LEXIS 6664, *10 (N.D. Ind. 2007).

In *TrafFix*, the Supreme Court advanced the "traditional rule" of functionality, defining a feature as functional "when it is essential to the use or purpose of the device or when it affects the cost or quality of the device." 532 U.S. at 33.[5] The *TrafFix* decision involved a claim of trade dress infringement where the plaintiff, MDI, was claiming trade dress protection for a mechanism that had been the subject of an expired utility patent. 532 U.S. at 29-30. The mechanism consisted of dual-springs placed at the base of road and other outdoor signs to keep them from falling over in heavy winds. After the expiration of the patents, the defendant reverse-engineered MDI's product and created signs with a dual-spring mechanism that looked like MDI's. *Id.* at 25-26. MDI sued the defendant for trade dress infringement. The Supreme Court held that under the traditional rule of functionality, "[a] utility patent is strong evidence that the features therein claimed are functional." *Id.* at 29. The Court further stated that:

> [w]here the expired patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device.

*Id.* at 30.

Defendants argue that the shape of Clark Tile's spreaders is illustrated and

---

[5] If a feature is deemed functional under the traditional rule, "there is no need to proceed further to consider if there is a competitive necessity for the feature." *TrafFix*, 532 U.S. at 33. Likewise, courts need not consider design alternatives if functionality can be conclusively established under the traditional rule. *Invisible Fence*, 2007 U.S. Dist. LEXIS 6664, *15.

10

claimed in functional terms, feature by feature, in Clark Tile's expired utility patent, the '302 patent. Defendants contend that the spreaders' shape consists of the following features: (1) a trapezoidal shaped blade, (2) notches, (3) color-coding, (4) an arcuate handle, (5) reinforcing ridges, and (6) an insert plate.

### A. The Triangular Notches

We begin by analyzing the notches on plaintiff's red and white adhesive spreaders. Defendants argue that the notches are functional because they are recited in claim 5 of the '302 patent and because they function as a gauge to allow the user to apply an adhesive layer of appropriate thickness. When asked if the size of the notch had to do with the spreading characteristics of the tool, Mr. Clark testified that "it could be concluded that the notch is a gauge." Mr. Clark also agreed that depending on the notch size, the compound or adhesive would spread differently. Furthermore, claim 5 of the '302 patent describes a trapezoidal shaped hand trowel "wherein the outer edges of said blade portion are serrated in a predetermined pattern." Thus, at first glance, it appears that the notches are functional because they are a feature claimed in the expired utility patent and because they are essential to the use or purpose of plaintiff's trapezoidal shaped adhesive spreaders.

However, plaintiff points out that both of its adhesive spreaders employ a triangular notch that is not claimed in the patent. Indeed, while claim 5 states that the outer edges of the blade are serrated in a predetermined pattern, claim 5 does not require any specific type of serration or notch. Plaintiff argues that the notches may be of one form or another depending on how a manufacturer chooses to make them. Plaintiff's contention in this regard is supported by the patent language describing the

11

trapezoidal shaped embodiment. The patent states as follows:

> A triangular notch serration . . . . is illustrated, however, any other type of serration (e.g., square, rectangular, half-round or combinations thereof) may be used which is appropriate to the type of adhesive to be spread.

('302 patent, col. 3, lines 24-28).

Defendants argue that the functional nature of the triangular notches on plaintiff's spreaders is clearly shown in the patent specification and by Mr. Clark's testimony. Defendants also contend that plaintiff essentially admits in its brief that the notches depicted in the patent are functional. Finally, defendants argue that it is peculiar that plaintiff contests the functionality of the notches at all in light of its December 2005 admission to the United States Patent and Trademark Office ("PTO") that its trade dress did not cover the "functional notched teeth."[6]

While this Court agrees that notches in general likely constitute a functional feature of adhesive spreaders, the '302 patent specifically states that serrations other than a triangular notch serration may be used. Contrary to defendants' suggestion, the '302 patent simply does not claim the triangular notches featured on plaintiff's spreaders. Furthermore, defendants failed to present any facts demonstrating that other types of notches would not have been appropriate for the spreaders at issue. As a result, it is unclear whether triangular notches (as opposed to an alternative type) are essential to the use or purpose of plaintiff's spreaders or whether they affect the quality or cost of the spreaders. Accordingly, this Court finds that there is a question of fact

---

[6] On December 13, 2005, plaintiff submitted a Response to Office Action to the PTO. In that paper, plaintiff stated that "the broken lines outlining the mark, and the broken lines on the surface of the trowel identify the functional notched teeth, ribs and shape of the goods and are not claimed as features of the mark."

12

with respect to whether the triangular notches are a functional feature or merely an ornamental, incidental or arbitrary aspect of plaintiff's spreaders.

### B. The Insert Plate

Next, we turn to the insert plate. Defendants argue that the insert plate is functional because it is recited in claim 7 of the '302 patent, it adds strength to the assembly, it provides a surface for advertising, and it facilitates use. Defendants are correct that the insert plate is recited in claim 7. However, the '302 patent states as follows:

> While the use of the insert plate . . . . is not essential to the invention its use is desirable in several respects; first, it adds strength to the assembly; second, it protects the user's hand from the material being troweled and third, it provides a surface on which information such as advertising, instructions and the like may be placed by various techniques such as heat stamping, silk screening, adhesive labels or painting.

('302 patent, col. 2, lines 22-29).

In *TrafFix*, the Supreme Court clarified that a feature is functional "when it is essential to the use or purpose of the device *or* when it affects the cost or quality of the device." 532 U.S. at 33 (emphasis added). Here, the '302 patent expressly states that the insert plate is not essential to the invention. Consequently, the only question is whether the insert plate affects the cost or quality of plaintiff's spreaders.

None of the parties focused on whether the insert plate affects the cost or quality of the spreaders. Plaintiff argues that the insert plate is purely optional and incidental. Defendants contend that the '302 patent attributes numerous functions to the insert plate and that Mr. Clark's testimony is in accord. Mr. Clark testified that he chose the location of the insert plate for ease of manufacturing. He further testified that he chose

13

the white background for the plate because white is the natural color of high-impact styrene and therefore, he would save the cost of coloring it. Additionally, Mr. Clark testified that with a white background, he could print any color logo or advertising message on the insert plate.

Mr. Clark's testimony demonstrates that the use of a white insert plate, as opposed to another color, could affect the cost of plaintiff's spreaders. However, the cost would only be affected if an insert plate is in fact incorporated into the spreader. Once again, the '302 patent expressly states that use of the insert plate is not essential. Additionally, while Mr. Clark chose the location of the insert plate for ease of manufacturing, there is no evidence that suggests a change in location of the insert plate would affect the cost or quality of the spreaders.

Furthermore, defendants' argument that the '302 patent attributes numerous functions to the insert plate is not persuasive. The fact that the insert plate serves some use or purpose does not necessarily mean that it is essential to the use or purpose of plaintiff's spreaders. *See Invisible Fence,* 2007 U.S. Dist. LEXIS 6664, *24-25. This is particularly true here because the '302 patent expressly states that the feature is not essential.

Simply put, defendants rely too heavily on the presumption that a feature disclosed in the claims of a utility patent constitutes strong evidence of functionality. This Court finds that such a presumption is overridden where the language of the utility patent expressly states that the feature in question is not essential to the invention. In this case, it may turn out that the cost or quality of the spreaders is affected by the use of an insert plate because it adds strength to the assembly, it protects the user's hand

from the material being troweled, and it provides a surface for advertising. However, because none of the parties addressed the cost or quality issue specifically, it is unclear whether the insert plate affects the cost or quality of plaintiff's spreaders or whether it is merely an ornamental, incidental or arbitrary aspect of the spreaders. Accordingly, there is an additional question of fact for the jury to resolve.

### C. The Overall Look

The parties concentrated on a feature by feature analysis of plaintiff's spreaders. This Court has already addressed two of those features and found that there are questions of fact relating to both. However, we must keep in mind that plaintiff seeks to protect the overall look of its spreaders. Therefore, the appropriate focus is on the overall trade dress rather than on each individual feature. See *Logan Graphic Prods. v. Textus USA, Inc.*, 2003 U.S. Dist. LEXIS 7534, *11-12 (N.D. Ill. 2003); see also, *Vaughan Mfg. Co. v. Brikam Int'l Inc.*, 814 F.2d 346, 350 (7th Cir. 1987). With that mentality, this Court finds that both the insert plate and the triangular notches affect the overall look of plaintiff's spreaders. Indeed, the spreaders would look quite different if an alternative notch serration was used and an insert plate was not incorporated. Because there are questions of fact with respect to whether the insert plate and the triangular notches are functional features, summary judgment is not warranted here. Accordingly, defendants' motion for summary judgment on plaintiff's trade dress claims is denied.[7]

---

[7] At the very least, questions of fact relating to the triangular notches and the insert plate preclude summary judgment. Consequently, this Court declines to address defendants' arguments with respect to the functionality of the arcuate handle, the trapezoidal blade, the reinforcing ridges and the color coding.

Defendants also moved for summary judgment on the remaining state law claims. Their request for summary judgment on the state law claims hinges entirely on this Court granting summary judgment on plaintiff's trade dress claims. Because we denied defendants' motion for summary judgment on the trade dress claims, their motion for summary judgment on the state law claims is denied as well.

**CONCLUSION**

For the reasons set forth above, defendants' motion for summary judgment is denied it its entirety. It is so ordered.

ENTER:

_____
**MICHAEL T. MASON**
**United States Magistrate Judge**

**DATED: December 7, 2007**